BENJAMIN H. PAYNE, Appellant, *v.* ANDREW KING, GARNISH-
EE, &C., Respondent.

*Guardian and Ward—Interest—Note.*—Where the guardian lends the money of
his ward and takes a note therefor, the interest will be compounded annu-
ally until the ward comes of age, although no such contract be expressed
in the note—R. C. 1855, p. 827, § 30.   Fagg, J., dissenting.

*Appeal from St. Charles Circuit Court.*

Payne, having a judgment (by confession) against Gray, had an execution issued thereon, and garnished the respondent King, who was trustee in a deed of trust, executed by said Gray, to secure the payment of two notes to Mrs. Julia A. Eaton, guardian of James W. Eaton and David H. Eaton ; both of said notes were of the same date, were for the same amount, and due at the same time—one payable to Julia A. Eaton, guardian of James W. Eaton, and the other to Julia A. Eaton, guardian of David H. Eaton.   The following is a copy of one of the notes :

" $1,876.52.   One year after date, I promise to pay to the order of Julia A. Eaton, guardian of James W. Eaton, minor heir of William P. Eaton, deceased, the sum of eighteen hundred and seventy-six dollars and fifty-two cents, bearing ten per cent. interest per annum from date, negotiable and payable without defalcation, for value received.   Witness my hand this 27th day of November, 1856.   James S. M. Gray."

King, as trustee, sold the lands on the 3d day of June, 1865, for the sum of $8,655.

The two notes, at the date of the sale, June 3, 1865, including expenses of foreclosing the deed of trust and calculating the interest without rests, or at simple interest, amounted to

$7,109.34, which amount deducted from amount of sale of the land, $8,665, left $1,555.66 in the hands of the trustee. Calculating the interest on the notes at compound interest, it made $1,151.22 more than at simple interest; and the interest compounded on said notes, left in the trustee's hands after paying the notes $44.44, which amount the garnishee in his answer admitted, and for which judgment was rendered by the court below.

The defence set up in the answer was that the notes being payable to a guardian, in law they drew compound interest, and Gray knew it and promised to pay it; and that it was not necessary for it to be stated in the notes, that the interest, if not annually paid, would become a part of the principal and draw like interest as the note.

Appellant took issue on the answer.

On the trial, respondent offered James W. Eaton as a witness, to whose introduction appellant objected, because this suit was defended for his immediate benefit, he being one of the beneficiaries in said deed of trust and owner of one the notes. The court admitted the witness, who testified and stated that, on his arriving at age, he had received and taken from his mother the note payable to her as his guardian, and since then said note belonged to him and was his property; and that after he owned said note he had a conversation with Gray in 1861, and another in the spring of 1865, and in both he admitted that the notes were drawing compound interest.

James W. Eaton was 21 years old on the 26th day of September, 1860, and David H. Eaton was 21 years old on the 12th of January, 1863.

Respondent here closed; and plaintiff introduced J. S. M. Gray, the maker of said notes, who stated that he never contracted to pay compound interest; that compound interest never was mentioned to him by the Eatons until the spring of 1865, just before James W. Eaton went to Nebraska; and again, about the time of the sale, the respondent King read

to him from the statutes and said the law allowed compound interest to the Eatons, but neither he nor any of the Eatons ever pretended to claim it of him as a matter of agreement.

The court rendered judgment against respondent for $44.-44, which was the amount due at day of sale, after paying the two notes, calculating compound interest thereon.

Calculating the notes at simple interest, the amount in the trustee's hands after paying the notes was $1,555.66.

*Wm. A. Alexander*, for appellant.

If James W. Eaton was a competent witness, the whole of his evidence was incompetent, because, 1st, it consisted of statements of Gray, who was a competent witness; 2d, his statements changed and altered the written agreement as. embodied in the notes. The notes cannot be varied by parol evidence of contemporaneous or subsequent oral agreement; in other words, parol evidence is not admissible to contradict, enlarge, vary, or add to, a written agreement—Woodward v. Thornton, 8 Mo. 161; Jones v. Jeffries, 17 Mo. 577; 29 Mo. 187: Smith, Adm'r, v. Thomas, 29 Mo. 309.

Sec. 30, R. C. 1855, p. 827, is directory. It authorizes the guardian to loan out the money of his ward at the highest rate of interest that can be obtained, and take notes binding the obligors to pay the interest annually; and if not paid at the end of the year, the interest to bear interest also. If the guardian chooses to retain his ward's money in his own hands, the interest may be calculated on him with annual rests. If he does not choose to retain it, and cannot loan it out on interest, in that case he cannot be charged any interest. If he puts out the money without any contract as to the rate of interest, it will draw simple interest at six per cent. In cases of failure of duty, mismanagement, or fraud, courts are authorized to require compound interest of the guardian; but in no case can a guardian require his debtor to pay compound interest except by such debtor's own agreement or contract in writing.

If these notes drew compound interest, it was because the

money they call for was the property of minors. James W. Eaton was 21 years old on the 26th day of September, 1860, and David H. Eaton was 21 on the 12th day of January, 1863. The notes, if they drew compound interest at all, did not draw it after the minors arrived at majority, when the relation of guardian and ward ceased—Clay v. Clay, 3 Met. (Ky.) 548; Armstrong v. Walkup, 12 Grat. (Va.) 608.

The title to the notes and the money they called for was vested in Julia Eaton. The word guardian in said notes did not change their legal effect; the notes would be the same in law without as with the word "guardian" therein. The word "guardian" is merely *descriptio personæ*. These notes, in fact and in law, were and are the same as if the words "guardian of James W. and David H. Eaton" had not appeared in them; and compound interest can no more be collected on them than it could if the words "guardian of James W. and David H. Eaton" had been omitted and not inserted therein. They were Mrs. Julia Eaton's property; she could sell or transfer them. The same interest would be collectable thereon as if the notes had been payable to Mrs. Julia Eaton without the descriptive words "guardian," &c.—Jeffries v. McLean's Exec'r, 12 Mo. 538; Thornton v. Rankin, 19 Mo. 193, and cases cited.

*E. A. Lewis,* for respondent.

James W. Eaton was a competent witness for respondent. —Bowman v. Stiles, 34 Mo. 141, 146; McCullough v. Mc-Cullough, 31 Mo. 226; Perry v. Maguire, 31 Mo. 287.

The court correctly declared the law arising upon the facts of the case—R. C. 1855, p. 827, § 30. The obvious intent of the statute is that the debt shall bear compound interest, and this without reference to the security taken, whether by note or otherwise, or any stipulations therein contained. That this intent of the statute is not to be qualified by the interest law, which provides for the compounding of interest by express stipulation in the contract, is evident from the fact that the law of 1835 was literally the same with the one

now under consideration (R. C. 1835, p. 295, § 9), and yet the interest law did not then sanction the compounding of interest on the face of the instrument—R. C. 1835, p. 333. This view is strengthened by the language of the statute, viz., that the interest, if not paid annually, shall then bear interest "without the necessity of a new mortgage or security."

Whatever may have been Gray's liability on the original contract, the law is well settled that his agreement as proven by J. W. Eaton, and his settlement with the trustee after the interest had become due, rendered him liable to pay compound interest without any reference to the statute concerning guardians—3 Pars. Contr. 151–53; Mowry v. Bishop, 5 Paige, 98; Childers v. Deane, 4 Rand. 406; Forbes v. Cartfield, 3 Ohio, Ham. 17.

WAGNER, Judge, delivered the opinion of the court.

Several irregularities were committed upon the trial of this case, but as they have no particular bearing upon the real question involved, and worked no injury to the party complaining, they demand no especial notice.

The principal matter in issue is the proper construction to be given to the 30th section of the "Act concerning guardians and curators"—R. C. 1855, p. 827. That section, after providing that guardians and curators shall put the money of minors entrusted to their care at interest, declares that "the interest in such cases shall be payable annually; and, if not then paid, shall become part of the principal and bear interest as such, without the necessity of a new mortgage or security, unless the court should deem such additional security proper."

The guardian in this case loaned out the money of the ward, and neglected to provide or specify in the note, or make any special agreement, that the interest, if not paid annually, should be compounded. The court below computed interest on interest with annual rests up to the date of the garnishment, and from that decision this appeal is

taken. The statute is not intelligibly drawn, and its meaning is not entirely devoid of difficulty.

It may be contended with plausibility that it was only intended to authorize the guardian to loan the money on the terms and in the manner therein prescribed, and to fix the measure of responsibility for his failure or neglect of duty; and that however he might incur liabilities for disregarding an imperative injunction of the law, that could in nowise affect the obligor in the bond, or the person to whom the money was loaned; and without an express stipulation in the contract, the interest could not become a part of the principal and bear interest. But was this the real intention of the law-makers when they passed the act? This section was in the revision of 1835, and has been continued without change in the subsequent revisions. It was not till after this law had long been in force that parties were allowed, by contract or stipulation, to make the interest, if not paid punctually, a part of the principal, and then bear like interest as the principal debt; and this could only be done where there was an agreement inserted in the instrument which evidenced the contract or obligation. But we find no such provision in the act under consideration: its language seems to be imperative, and declares that the interest shall be paid annually; and if not then paid, shall become a part of the principal and bear interest as such, without the necessity of any new mortgage or security. No reference is made to any contract or agreement between the guardian and the person borrowing the money; but the terms are absolue and unqualified, and express the legal meaning and obligations which the contract of borrowing imports.

When parties make a contract or agreement on any given subject, they contract with reference to and are governed by the law on that subject. A promissory note may be given without expressing any interest on its face, yet after maturity the law will allow interest notwithstanding no stipulation for its payment was made; and hence where the law, as in this case, says that interest shall be paid annually, and,

if not so paid, it shall become a part of the principal and bear interest, it must be considered that the law enters into and forms a part of the contract although no such agreement or stipulation is included in it.

But it further appears by the record, that, when the ward arrived at the age of twenty-one years, the guardian assigned to him the note which is the subject of this controversy, and he did not proceed to collect it, but let it remain for a considerable period. The court rendered judgment for compound interest for the whole length of time. The statute was made for the benefit of minors. Infants are the peculiar favorites of the law and of the courts, and their interest will always be protected. But when they arrive at age they are fully emancipated from guardianship and control, and are able not only to protect themselves, but have full capacity to make their own contracts ; their wardship is then at an end, and laws giving them peculiar immunities during their minority are no longer applicable.

The reason of the law ceasing, the law itself ceases.— From the time the ward arrived at full age and received the note, current or simple interest only should have been calculated, without a new agreement was made between him and the maker of the note stipulating for a different rate of interest. There was some evidence attempting to show that such was the fact, but we do not understand the judgment of the court to have been predicated upon that evidence.

The judgment will be reversed and the cause remanded for further proceedings in conformity with this opinion.

Judge Holmes concurs.

FAGG, Judge, dissenting.

I do not concur in the opinion of a majority of the court, but hold that the note sued upon was the property of the guardian until it was assigned by him to his ward after he became of age. Both upon reason and authority I think it can be shown that the words " guardian of," &c., are to be

taken as mere *descriptio personæ*, and upon the death of the guardian the note in question would have gone to his administrators, and not to the succeeding guardian, as a part of the ward's estate. If this view be correct, then the contract should have been interpreted by the face of the note itself, and it was wrong to compound the interest. If the law is to be taken as a part of the contract, then all that need be expressed in obligations of this character is the amount of money to be paid, coupled with a recital of the fact that it belongs to the estate of a minor. The guardian in that case could recover not only compound interest, but it must be computed at the highest rate that could have been obtained, to be shown by any competent evidence of that fact. Surely this could not have been the intention of the Legislature. The policy of the general law at the time of the enactment of this statute being against contracts of this character, may give some force to the suggestion that it was intended for the benefit of the minors exclusively; but my opinion is that its real object was to enable the guardian to make his contract for the loan of his ward's money in such manner that if the interest was not collected at the end of the year, it might still be carried into the settlement of his accounts without injury to him. The protection of the minor is the bond of the guardian ; and if he fails to put out the money of his ward in the manner provided by law, so as that a loss in the matter of interest is sustained by his failure, then I apprehend that the remedy must be upon his bond, and not against a party with whom he has contracted in good faith. If the construction given to this statute by the court below is to prevail, my opinion is that the note cannot be affected by the fact of the minors coming of age, but the interest must continue to be computed in the same manner until the note is fully paid off.