THE STATE, Appellant, v. H. V. CARSON.—18 S. W. (2d) 457.

Division Two, June 4, 1929.

48

*Stratton Shartel,* Attorney-General, *A. B. Lovan,* Assistant Attorney-General, and *Tyre W. Burton,* Prosecuting Attorney, for appellant.

50

*W. V. Draffen* and *D. W. Shackleford* for respondent.

WHITE, J.—The defendant was convicted in the Circuit Court of Howard County of selling mortgaged property, under Section 3348, Revised Statutes 1919. The information charged that May 3, 1927, he executed and delivered to the Citizens Bank of New Franklin, Missouri, a chattel mortgage transferring certain property, livestock, described, to secure a note for $1404, signed by him and payable to the Citizens Bank of New Franklin; that on the ——— day of September, 1927, intending to cheat and defraud the said Citizens' Bank of New Franklin, he did unlawfully and feloniously sell to one R. M. Robertson a part of the said livestock, describing it, without the written consent of the Citizens Bank of New Franklin, mortgagee, and without informing the said R. M. Robertson that the property was mortgaged; that the value of the property so sold was one hundred dollars.

On a trial the jury found the defendant guilty and assessed his punishment at a fine of one hundred dollars. Later he filed a motion for new trial, assigning several alleged errors in the proceeding, and attacking the amended information upon which the trial was had.

The court sustained the motion for new trial, and filed a memorandum, considering each assignment of error, and finding that there was no merit in any assignment except one—that the information was insufficient. The memorandum entered upon the record proper contains the following:

"It is the judgment of the court that the amended information is insufficient, because it does not charge that the Citizens Bank of New Franklin was a corporation. It is the further judgment of the court that, although the evidence showed that the bank was a corporation, the information is insufficient because it did not allege that fact. It is the opinion of the court that the defendant was bailee of the property mortgaged, and his wrongful sale of it is analogous to embezzlement.

"For the foregoing reason the motion for new trial is sustained."

The prosecuting attorney thereafter filed his motion for rehearing, which was overruled, and thereupon filed his application and affidavit for appeal on behalf of the State to this court. The appeal was granted. All of this appears in the record proper. He then filed a bill of exceptions in which was incorporated the motion for new trial filed by the defendant, the memorandum of the court sustaining said motion; the motion for rehearing filed by the prosecuting attorney, the affidavit for appeal, and so on. The record therefore is complete so far as effectually to preserve the point relied upon by the State for a reversal. The order and ruling of the court appears both in the record proper and in the bill of exceptions.

I.   Section 4080, Revised Statutes 1919, as reenacted in 1925 (Laws 1925, p. 198), provides that the motion in arrest of judgment is thereby abolished, and all the rights which theretofore could have been saved by a defendant in a motion in arrest, "*and which have not been waived by failure to make timely objections,*" may be saved in the motion for new trial.

In ruling upon the motion for new trial the court overruled every assignment of error properly belonging to the motion for new trial before the enactment of that statute, and sustained that part of the motion for new trial which performed the office formerly performed by the motion in arrest, and the propriety of that ruling must be determined with that in view.

II.   Respondent contends that an appeal does not lie for the State in this case, because there was no final judgment in favor of defendant, and cites several decisions by this court which support that position.

There was no appeal at common law. The only authority for an appeal by the State must be found in the statute. There is no constitutional restriction to prevent an appeal by the State except that in Section 25, Article II, to the effect that any person after being once acquitted by a jury shall not again be put in jeopardy for the same offense. That would seem to leave the Legislature free to provide for an appeal by the State except in case of an acquittal by a jury. That same section mentions certain circumstances which shall not constitute jeopardy, but those provisions have never been construed to restrict the right of the Legislature to provide for appeals by the State.

We must, therefore, have recourse to the exact language of the statute, and all statutes concerning appeals as they may relate to each other, to determine whether an appeal would lie in this case.

Section 4086, Revised Statutes 1919, authorizes appeal by defendant in all criminal cases where final judgment is rendered. Following sections provide the manner of perfecting a defendant's appeal.

Section 4098 limits appeals by the *State* to the "cases" and "circumstances" mentioned in the next succeeding section, which is now as follows:

"Sec. 4099. *Indictment or information insufficient, defendant held, State may appeal.*—When any indictment or information is adjudged insufficient upon demurrer [*or exception*], or where judgment thereon is arrested or set aside, the court in which the proceedings were had, either from its own knowledge or from information given by the prosecuting attorney that there is reasonable ground to believe that the defendant can be convicted of an offense, if properly charged, may cause the defendant to be committed or recognized to answer a new indictment or information, or if the prosecuting attorney prays an appeal to an appellate court, the court may, in its discretion, grant an appeal."

That section was amended by an Act in 1925, by inserting the words "or exception." The word "judgment" does not appear in the section. There is not a single word or phrase in the section by which it can be said that an appeal for the State will lie from a final judgment, nor unless there *is* a final judgment. It is suggested that the word "adjudged" means a final judgment. Webster's International Dictionary defines the word and says it does not necessarily imply a final judgment, but may apply to interlocutory orders or decrees of court. Bouvier's Law Dictionary uses the same language, and adds: "It is synonymous with decided, determined." See also Words and Phrases, to the same effect.

In this case the information was adjudged, decided or determined, insufficient on an *exception* presented in the motion for new trial.

The further language of that Section 4099, as amended in 1925, provides that in case an information is adjudged insufficient upon demurrer or exception. ". . . the court . . . may cause the defendant to be committed or recognized to answer a new indictment or information, or if the prosecuting attorney prays an appeal to an appellate court, the court may, in its discretion, grant an appeal." That, of course, can only mean while the defendant is still in custody.

The form of final judgment in favor of the defendant is set out in State v. Gregory, 38 Mo. 502, cited by defendant, and that form closes with the determination that the said defendant "be dismissed and discharged of the said indictment, and that he go thereof without day." [Citing Chitty's Criminal Law, 277.]

If the judgment is final in favor of the defendant he is discharged. Then how could the court cause him "to be committed or recognized to answer a new information or indictment?" The court has lost jurisdiction over him.

That provision is directly connected with the next clause which allows an appeal. In the same situation, in the same circumstances, where the court may cause the defendant to be committed or recognized and to answer a new indictment, it may, as an alternative, allow an appeal. Inevitably that must be before a final judgment. Otherwise the statute has no meaning.

In civil cases, Section 1469, Revised Statutes 1919, either party to a suit aggrieved may take appeal from the judgment or from an order granting a new trial, *or in arrest of judgment*. Will anyone say in a civil case when a judgment is arrested or a new trial granted that there must be a final judgment before the losing party can appeal? What is the difference in meaning between the language "in arrest of judgment" in Section 1469, and the language in Section 4099 "where judgment thereon is arrested?"

Other sections reenforce this conclusion. It will be noted under Section 4099 that the court may commit or recognize the defendant *or* allow an appeal. Section 4100 then provides that the defendant may be recognized in case he *does* appeal. That Section simply supplements Section 4099.

Then Section 4101 provides that if no appeal be taken or allowed in the State, in any case in which an appeal would lie on behalf of the State, the prosecuting attorney may apply for and prosecute a writ of error in the Supreme Court, and in such case the defendant shall *not* be required to enter into recognizance to answer further for such offense. But if the judgment of the circuit court is reversed he may be arrested on warrant. The words "in any case in which an appeal would lie" mean in the *same* case. They do not mean at the same stage of the proceeding in the case. If the prosecutor fails to appeal, as provided in Section 4099, and allows the case to go to final judgment and the defendant to be discharged, then he may sue out a writ of error. That applies to any situation where he might have appealed in time. In such case the defendant cannot be committed or recognized. Thus the Legislature determined that the trial court has no further jurisdiction over a defendant in whose favor a final judgment has been rendered, discharging him from custody. If that final judgment is reversed in writ of error then he may again be arrested on a new warrant.

It is plain from these statutes that the State may appeal from an order arresting a judgment or holding an information or indictment insufficient on demurrer or exception. A judgment is "arrested"

when it is stayed, in criminal cases after verdict. [34 C. J. 31.] But if the prosecutor waits until after there is a final judgment and discharge of the defendant, then he cannot appeal; if he desires a review of the cause he must sue out a writ of error as provided in Section 4101.

The decisions cited by respondent do not attempt to construe those statutes, but appear to arise from a notion adhering in the judicial mind that because a defendant cannot appeal except from a final judgment the State likewise cannot. No reason is advanced for any such holding. Every such ruling ignored the statute altogether.

Some cases are cited which are not in point. For instance State v. Hewitt, 246 S. W. 546, where it was held that appeal would not lie except from a final judgment. In that case it was the *defendant* who appealed. The same is true of State v. James, 194 Mo. 268-273.

In State v. Craig, 223 Mo. 201, the State appealed from a judgment of the trial court sustaining a defendant's plea in abatement to an indictment. The court held the appeal would not lie, because sustaining a *plea in abatement* did not come within the terms of the statute which provided that an appeal would lie when an indictment is quashed or adjudged insufficient upon demurrer.

State v. Ross, 119 Mo. App. 401, was an appeal by the State from a ruling of the trial court in sustaining a demurrer to the information. That was prior to the amendment of the statute in 1909, when only an indictment was mentioned in the statute allowing the State to appeal. The court followed the language of the statute. The ruling in that case was not based upon the lack of final judgment, but because "information" was not mentioned in the statute as it stood.

State ex rel. v. Klein, 140 Mo. 502, was a condemnation proceeding and not a criminal case at all. It merely defines what a final judgment is.

The latest case in which it was held that the State could not appeal except from a final judgment is State v. Fraker, 141 Mo. 638. The court there makes no reference whatever to the statute which authorizes an appeal by the State, but refers only to some earlier cases.

State v. Mullix, 53 Mo. 355, is cited in the Fraker case. One short paragraph comprises the opinion. No statute is mentioned and no reason for the ruling is stated.

State v. Gregory, 38 Mo. 502, is cited. That is the case mentioned above where the court sets out a proper form for final judgment. The opinion there also ignores the statute, presents no reason for its ruling, and disposes of the matter in a short paragraph.

State v. Brannon, 53 Mo. 244, is similar to the Fraker case. The statute is not mentioned nor any reason given for the ruling.

The same is true of State v. Pepper, 7 Mo. 348.

In State v. Wilson, 100 Mo. App. 472, the Court of Appeals in a short paragraph disposed of the case on the authority of the Fraker case, supra.

In not one of those cases was the language of the statute construed, nor the purpose of allowing the State an appeal considered. It is evident that the Legislature in 1925, in amending Section 4099 by including the words ''or exception,'' had in mind to extend the scope of the statute. Those cases should be no longer followed.

As a rule the State, in the absence of express statutory authority, cannot appeal from a final judgment, *as such*, in favor of the defendant. [17 C. J. 41, Sec. 3312; Ib. p. 46.] Under our statute the State cannot and does not appeal from a final judgment. The appeal is from an adverse ruling on a demurrer or motion in arrest, etc. Since the State is not appealing from a final judgment here, there is no reason nor law requiring a final judgment before the appeal should be allowed.

III. It is next urged by the respondent that the information is fatally defective, because the defendant failed to allege that the Citizens Bank of New Franklin, mortgagee, was a corporation. It is further claimed that this objection to the information may be raised for the first time in this court.

The authorities in this State and elsewhere are in conflict on that point. [31 C. J. 730.]

A number of cases from this State have been cited in support of defendant's view, some of which do not support him. State v. Schultz, 295 S. W. 535, l. c. 536; State v. Simpson, 295 S. W. 739, are where no owner of the property involved was alleged at all, an averment which is held necessary, on the theory that one cannot be guilty of dealing criminally with the property of another unless the ownership is in such other. The same is true of State v. James, 194 Mo. 268, l. c. 273. These cases, therefore, are not in point.

The following cases, however, are in point in favor of defendant's position: State v. Patterson, 159 Mo. 98, l. c. 101; State v. Clark, 223 Mo. l. c. 51; State v. Jones, 168 Mo. 403; State v. Kelley, 206 Mo. l. c. 693; State v. Jordan, 289 S. W. 540; State v. Hurt, 285 S. W. 976; State v. Horned, 178 Mo. l. c. 61, and State v. Henschel, 250 Mo. l. c. 269-270. On the other hand, this court has distinctly held to the contrary in two cases: State v. Shields, 89 Mo. 259, and State v. Hedgpeth, 311 Mo. 457.

Each of the several cases holding such allegation necessary was by Division Two. The only case on the subject by the full court was State v. Shields, 89 Mo. 259, l. c. 261, all five of the judges then com-

posing the court concurring. It was there held that "it was not necessary to the sufficiency of an indictment that it should allege either that the owner of the property was a corporation, or that, as such, it was capable of owning property," citing cases from other jurisdictions. That case was not mentioned in any of the decisions holding the allegation necessary, except in State v. Henschel, supra.

State v. Hurt, supra, holding the allegation necessary, and State v. Hedgpeth, 311 Mo. 457, holding it unnecessary, were both late cases decided by Division Two. The former follows the Jones case, 168 Mo. 403, supra, and though later, does not mention the Hedgpeth case. In the Hedgpeth case the matter is reasoned out, and the opinion was ordered published in the official reports. It is not the number of decisions which constitute the "weight of authority;" it is the cogency of the reasoning by which the conclusion is reached.

It is important here to note the reasons advanced in support of the ruling in favor of defendant's position. In the two latest cases, the Hurt case and the Jordan case, the opinions merely follow the older cases without considering the question on its merits. Several of the other cases note the proposition stated in the case of State v. Jones, 168 Mo. l. c. 403, where the court says "nothing is to be left to intendment; the defendant is entitled to know whether the State intends to show ownership in the firm composed of individuals or in a corporation." And then this:

"There are cases to the contrary in other States, but *in the absence of a statute* we are relegated to the common law, and we hold the information bad in substance in failing to allege the names of the co-partners," etc.; "if a corporation in not alleging it was a corporation." (Italics ours.)

That formula is repeated in later cases in almost the same words. No other reason is given. The Hedgepeth case and the Shields case, supra, should be followed because well reasoned and because of the statute noted next.

IV. The cases relied upon by defendant are based on the *absence* of a statute. The statute is not and was not *absent, but was ignored, in all those cases.*

The Statute of Jeofails, Section 3908, Revised Statutes 1919, provides:

"No indictment or information shall be deemed invalid, etc., . . . First, by reason of the omission or misstatement of the defendant's title, occupation, estate or degree, or of the county or town of his residence. . . .

"Fourth, . . . nor for want of any venue at all; nor for want of a statement of the value or price of any matter or thing, or the

amount of damages, injury or spoil in any case where the value or price, or the amount of damages, injury or spoil is not of the essence of the offense. . . . nor for any other *defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits.*"

In applying this section to this case two considerations are important:

*First,* is the omission to allege the corporate character of the Citizens Bank of New Franklin, a defect or imperfection similar to those enumerated above? No doubt the use of the words *"other defect,"* etc., means a defect in character similar to those enumerated.

Among the other defects enumerated in the statute the first is "by reason of omission or misstatement of the defendant's title, occupation, estate or degree, or of the county or town of his residence."

If that is not a defect or imperfection similar to a failure to allege whether the party affected is a corporation or a partnership or an individual, then there could not be one.

"Nor for want of any venue at all."

It is absolutely necessary to prove the venue of every crime charged in order to make out a case. But yet an indictment or information should not be held bad even if its fails to charge any venue.

"Nor for want of a statement of the value or price of any matter or thing or the amount of damages where the value, price or amount of damages, injury or spoil is not of the essence of the offense."

The price or value of property as affected by a criminal act comes into every case, but it is not necessarily the essence of the offense. Here, whether the bank affected was a private bank or corporation is not of the essence of the offense. The failure to describe it as one or the other was a formal and not a substantial defect, if one at all.

The second requisite is that the imperfection should "not tend to prejudice the substantial rights of the defendant upon the merits."

The following appears in the Bill of Exceptions:

"It is agreed by counsel for the State and counsel for the defendant, without waiving any of defendant's rights, that on the trial in this case evidence was offered and received without objection that the Citizens Bank of New Franklin was incorporated."

If the respondent is right that that fact should be alleged, then the evidence was incompetent, but the failure to allege the fact was a defect which didn't prejudice his substantial rights because he allowed the evidence to come in without objection. It has not been pointed out how it could affect his substantial rights. There is no possible fact which he might prove in support of his plea of not guilty, or in rebutting proof of the charge in the information as

filed, that he might have proved if the allegation of incorporation had been made.

It is said that the defendant is entitled to know whether the State intends to prove ownership in a firm composed of individuals or in a corporation. Why would he be in any better position to make his defense if that information was conveyed in the charge? Would it make the slightest difference as to the facts constituting his guilt? In this case the owner was alleged to be the Citizens Bank of New Franklin. If there could be any question about the identity of the individual or corporation thus designated there might be some reason for the complaint. The ownership of the mortgage is wholly immaterial, provided the mortgage was held by some person or corporation capable of owning and holding property. It is no part or element of the offense charged, which is that the defendant sold the property while the mortgage was in existence without informing the vendee that it was mortgaged. He is fully informed of the "nature and cause of the accusation" without any specific description of the mortgagee incidentally affected.

State v. Henschel, supra, is the only case cited by defendant in which the Statute of Jeofails is mentioned. In that opinion only two judges concurred, BROWN, P. J., dissenting. It was handed down sixteen years ago. A more reasonable and less technical interpretation of the criminal law prevails now, of which State v. Hedgpeth, 311 Mo. 452, is an illustration. It was there said (l. c. 457):

"Proof of the appellant's guilt of the crimes charged or either of them did not depend upon establishing the fact of the oil company's incorporation, but upon the question as to whether the appellant feloniously broke into the premises of another."

Accordingly it was held that proof of the incorporation was unnecessary.

There is no authority holding that a fact necessary to *allege* in describing the crime charged *need not* be proved. If it is not necessary to prove it it is not necessary to allege it. It was further said in that case (l. c. 458). "Whether such ownership was in a firm or a corporation is not material."

And the principle is elaborated at length, citing State v. Tracy, 294 Mo. 389. No authority is cited which holds it necessary to allege a fact *not material* to the issues. The ruling in the Hedgpeth case is therefore directly in point; the corporate character of the owner in this case need not be alleged. Section 4032, Revised Statutes 1919, does not touch this particular question. It provides only for the *manner* of proof when the *fact is material.*

Probably the trial proceeded to a finish before any counsel noticed the absence of the allegation. The only injury defendant could

claim is that he was not prepared to meet the issue because that *fact* was not alleged. He had a right to know what he had to meet. He was prejudiced if that fact injured his case. But he allowed proof of the fact to go in without objection, and thereby admitted that it was not prejudicial. How can he now be heard to say that it is inadmissible on any ground? Like any other item of evidence he must make timely objection if he would have it excluded. If this evidence did not hurt his case, then the failure to allege it could not hurt it; if the evidence was prejudicial, the failure to allege the fact was to his advantage because it furnished ground for a belated objection to the proof.

The defendant had made the mortgage in question to that bank. He was not troubled *then* about whether it was a corporation or a private bank. It made no difference in his obligation, nor in the quality of his act in selling the mortgaged property. The *identity* of the mortgagee was then well known to him, and he could not be mistaken as to who and what was meant by the Citizens Bank of New Franklin.

If we are not befogged by technical rules which mean nothing, we can see that no possible prejudice to defendant's case was caused by the failure to allege that the bank was incorporated. When the reason for a rule of law fails the rule fails. If there was ever a reason for holding that the fact of incorporation of the property owner should be alleged in a case like this, such reason is absent in this instance.

The weight of authority outside of this State favors the interpretation which we have adopted above. Wharton on Criminal Procedure, while stating the conflict of authorities upon this subject, gives the reason advanced by those authorities which held the corporate character must be alleged, as follows:

The reason for this rule has been said to be the fact that the indictment or information should always be sufficiently certain to enable the accused to prepare his defense, and also to plead, in bar, his acquittal or conviction successfully in case he should be again indicted for the same offense. How could that reason possibly apply to this case?

There was a Citizens Bank of New Franklin. There was one mortgage and only one mortgage under consideration. It covered certain specific property and it is only that specific property which is alleged to have been sold. There was no other mortgage covering property of like description. If the defendant is convicted of selling that particular property covered by that particular mortgage, or acquitted, it certainly would be a bar to any other prosecution, and the name and character of the party holding the mortgage had noth-

ing whatever to do with it. It would not matter who it was, even if a different owner was proven at the trial. The identity of the *thing* affected by the criminal act would prevent another prosecution.

Said Thompson on Corporation (3 Ed.) Section 293: "It is not easy to see how it could make the least possible difference in such a collateral matter as the guilt of one charged with committing a crime against a corporation, whether it was incorporate or unincorporate; since the corporation in a prosecution of this nature is not a party, and is merely collaterally introduced as being the party intended to be prejudiced by the commission of the crime."

The following cases hold that an allegation that the owner of the property affected is a corporation or an individual is unnecessary. [State v. Grant, 10 S. E. l. c. 555; Fischer v. State, 40 N. J. L. 169; Territory v. Garcia, 75 Pac. 34; State v. Rollo, 54 Atl. 683. See also 2 Bish. Crim. Proc. 718; Ib. sec. 488B; Alsobrook v. State, 54 S. E. l. c. 806; State v. Fogerty, 74 N. W. l. c. 754; Burke v. State, 34 Ohio St. l. c. 81-82; State v. Donovan, 95 Atl. l. c. 1042; State v. Fitzpatrick, 32 Atl. 1073.]

In Burke v. State (Ohio), supra, the court had under consideration a statute of jeofails *verbatim,* the same as our Section 3908. The court called attention to the tendency of courts nowadays to disregard that which is merely formal and technical, and on the other hand to preserve at every stage of the case every matter of substances, and afford the accused a trial as full, fair and impartial as reasonably could be desired, and then said: "In harmony with this reformation is our code of criminal procedure which has to be construed not strictly in all its parts, but according to its manifest spirit." The court then quotes the provisions of the statute like to those in our Section 3908.

V.   Section 4080 (Laws 1925, p. 198), in abolishing the motion in arrest and assigning its functions to the motion for new trial, says:
"*All the rights which heretofore could have been saved by defendants in a motion in arrest, and which have not been waived by failure to make timely objections,*" may be saved in the motion for new trial. The Legislature certainly meant something by that new statute.

"*All the rights*" which the former motion in arrest might have saved, may be waived by failure to make timely objection. This is one of those procedural rights, if it is anything. It was waived, if new Section 4080 means anything.

Proof that the Citizens Bank of New Franklin was a corporation was introduced without objection from the defendant. Appellant's counsel contended that the defendant was under no obligation to

point to the defect in the information. Of course the defendant may stand on his rights, and the State must make out a case against him without any assistance from him. He is not called upon to correct the State's error in the progress of the trial. But he knew as well before the trial began as he did later that the corporate character of the mortgagee was a defect, if in fact it was.

This court has constantly held that a defendant may waive his procedural and his substantive rights in the progress of his case. Under the statute he has a right to preliminary hearing but he may waive it by going to trial without objection on that ground. Errors may be committed against him in the trial of the case which would absolutely determine the case, errors of substance which would change the result of the trial. But he waives such errors unless he preserves his objection to them in the progress of the trial. In accordance with rulings of that character it is doing him no injustice to say that when he allowed incompetent evidence to be introduced to prove a *fact* which he says it is necessary to *allege*, that he waived his right to make the point after verdict.

It must be remembered that the rulings upon which the defendant relies were made when technical errors, having nothing to do with the guilt or innocence of the accused, were generally held to be sufficient to authorize a reversal. They were in accordance with the habit of mind which the older practitioners had acquired from long familiarity with the tendency to protect one charged with a crime in the enjoyment of every right and privilege which could be construed in his favor, regardless of whether it affected his guilt or innocence. The tendency now is to look at the substance of the accusation and not its form. The rules of pleading and procedure are to be construed so as to determine whether the defendant on trial is or is not *in fact* guilty of the crime charged, and not whether through some formal irregularity in the proceeding against him he may dodge the issue of guilt or no guilt. It is necessary only to preserve to him all the rights which enable him to make his defense upon the *facts* affecting guilt or innocence.

The judgment is reversed and the cause remanded, with directions to overrule the motion for new trial and reinstate the verdict. All concur; *Walker, J.*, in separate opinion.

WALKER, J., (concurring).—I concur in the result reached in the majority opinion as to the necessity of an allegation in the information of the corporate character of the bank named therein. However, I do not concur in the statement and conclusion that there is a conflict of authority in the decisions of this State as to this requirement.

Aside from the case of State v. Shields, 89 Mo. 259, our rulings are uniform in holding, as at common law (East. Pl. Cr. 650), that the allegation is essential to the validity of the charge. During the four decades that have elapsed in our judicial history, since the ruling in the Shields case, it has never been referred to in regard to the matter here under consideration, until the case of State v. Henschel, 250 Mo. 271, in which we refused to follow the Shields case and, in effect, overruled it and thus removed whatever seeming conflict in our decisions it might theretofore have been held to present.

The Hedgpeth case, 311 Mo. 452, 457, did not involve the question of the absence from the information of either ownership or the corporate character of the oil company named therein. These essentials were not lacking from the charge. The question, therefore, as to the validity of the information was not involved in the Hedgpeth case, but the vexing question was as to the quantum of proof necessary to establish the corporate existence of the company. It was held that the determination of that question was regulated by a statute, the terms of which had been complied with. That statute is as follows:

"If on the trial or other proceeding in a criminal cause, the existence, constitution or powers of any banking company or corporation, shall become material, or be in any way drawn in question, it shall not be necessary to produce a certified copy of the charter or act of incorporation, but the same may be proved by general reputation, or by the printed statute book of the state, government or country by which such corporation was created." [Sec. 4032, R. S. 1919.]

From which it follows as a logical sequence that the reason for the absence of any reference in later rulings to the Shields or Hedgpeth cases is the overruling of the former and the determination in the latter of another and different question than that of the sufficiency of the charge. Hence I only concur in the result of the majority opinion.