119   439|
130   475|

THE STATE v. SMITH, *Appellant.*

Division Two, January 31, 1894.

1. **Criminal Practice**: ROBBERY: INDICTMENT. An indictment for an attempt to commit a robbery is bad which charges that defendant put R. "in fear of immediate injury," instead of "in fear of immediate injury to his person."

2. ————: ————: ————: INSTRUCTION. Nor is such defect in the indictment cured by an instruction which required the jury to find that the attempt was to take the property against the will, by violence to the person or by putting him in fear of some immediate injury "to his person."

3. ————: INDICTMENT. An indictment can not be cured by an instruction.

*Appeal from St. Charles Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED.

*R. C. Haeussler* for appellant.

(1) In indictments, words and phrases shall be construed according to the common and approved usage of the language. Heard's Criminal Pleading, p. 39; also pp. 165, and following; 10 Am. and Eng. Encyclopedia of Law, p. 461. (2) Each count in an indictment ought to charge one single crime. Heard's Criminal Pleading, p. 103. (3) The indictment must charge the offense in the particular words of the statute creating such offense, and general terms, unaccompanied by the particular terms and words of the statute, are insufficient to properly charge the commission of an offense. Wharton on Criminal Law [2 Ed.], p. 136. (4) The statement or body of the indictment must set

forth all the ingredients of the offense. Kelley on Criminal Law [2 Ed.], sec. 175 and sec. 1092; Heard's Criminal Pleadings, pp. 162–168; Wharton on Criminal Law [2 Ed.], pp. 133, 135; *State v. Helm*, 6 Mo. 263; *State v. Rose*, 25 Mo. 426; *State v. Evers*, 49 Mo. 542; *State v. Terry*, 109 Mo. 601; *State v. Green*, 111 Mo. 585. (5) In indictments charging assault with intent to commit a felony, the intent must be alleged to have been felonious. *State v. Clayton*, 100 Mo. 516; *State v. Brown*, 104 Mo. 365. (6) The proofs produced by the state on the trial of a criminal case must correspond with the averments of the indictment in all material points. 10 Am. and Eng. Encyclopedia of Law, pp. 556–559. (7) In criminal cases, the court must instruct correctly upon all material questions and points involved in the determination of the case. R. S. 1889, sec. 4208; Kelley on Criminal Law [2 Ed.], sec. 390; *State v. Palmer*, 88 Mo. 568; *State v. Sharp,* 106 Mo. 106. (8) When the defendant testifies in a criminal case, instructions hypothecated upon his evidence should be given. *State v. Talmage*, 107 Mo. 543; *State v. Partlow*, 90 Mo. 608; *Nalley v. State*, 30 Tex. App. 456; Kelley on Criminal Law [2 Ed.], sec. 392.

*R. F. Walker*, Attorney General, and *L. H. Brecker*, for the state.

(1) The indictment is sufficient, and clearly charges the offense of which the defendant was convicted. It was unnecessary to allege that the attempted robbery was against the will of said Reed. *State v. Tissing*, 74 Mo. 72; *State v. Anderson*, 81 Mo. 78. (2) Words of equivalent importance are sufficient when exact words of statute are not used. *State v. Ware*, 62 Mo. 597; *State v. Watson*, 65 Mo. 115. (3) The instructions

were correct and liberal to defendant. (4) This court has held that when there are several counts charging the same offense, one good count will sustain a general verdict of guilty. *State v. Blan,* 69 Mo. 317; *State v. Testerman,* 68 Mo. 708.

GANTT, P. J.—The indictment preferred by the grand jury against the appellant is as follows, to-wit:

"STATE OF MISSOURI, } ss.
"County of St. Charles. }

"In the Circuit Court of St. Charles County, Missouri, March Term, 1893.

"The grand jurors for the state of Missouri duly impaneled, sworn and charged to inquire into and for the body of said county of St. Charles and state of Missouri, upon their oaths present and charge one James Smith, at said county of St. Charles, on the seventeenth day of February, 1893, unlawfully, willfully and feloniously, did attempt to feloniously rob certain money, property and valuable things of one H. A. Reed, with the intent to convert said money, property or valuable things to his use. And then and there in such attempt, and towards the commission of said robbery and felony, the said James Smith unlawfully, willfully and feloniously took hold of H. A. Reed, and offered violence to his person and by putting him, the said H. A. Reed, in fear of immediate injury and demanded said H. A. Reed to hand over his money, or he, the said James Smith, would blow his, the said H. A. Reed's, head off and the said James Smith then and there unlawfully and feloniously and forcibly took hold of said H. A. Reed, unbuttoned his coat, and placed his hand in the pocket of said H. A. Reed, to rob and steal, the money and property of the said H. A. Reed, and which the said H. A. Reed then and there had upon his person, and in his possession, and

with a weapon, to the jurors unknown then and there unlawfully and feloniously threatened and offered violence to said Reed, and with such weapon assaulted said H. A. Reed with the full intent unlawfully and feloniously to rob said H. A. Reed and carry out the felony aforesaid.

"But was intercepted and prevented from completing and carrying out said robbery and felony, by the timely interference of one H. Otto Pickert, who requested and demanded the said James Smith at the point of a pistol to let the said H. A. Reed alone; and with demand and request so made by the said H. Otto Pickert, had the effect then and there to prevent the said James Smith from completing and carrying out said robbery and felony, or to do violence to the person of said H. A. Reed.

"And the grand jurors aforesaid do say that the said James Smith then and there in the manner and form aforesaid, unlawfully, willfully and feloniously did attempt to feloniously rob the money and property of the said H. A. Reed against the peace and dignity of the state.

"Louis H. Breker, Prosecuting Attorney.

"And the grand jurors for the state of Missouri duly impaneled, sworn and charged to inquire within and for the body of said county of St. Charles and state of Missouri, upon their oaths present and charge that one James Smith, at said county of St. Charles, on the seventeenth day of February, 1893, unlawfully, willfully and feloniously did attempt to rob one H. A. Reed of certain money and property being then and there in his possession, to wit, $20 in money, and a watch of the value of $50. And in said attempt, and towards the commission of said felony and robbery, the said James Smith, then and there, willfully, unlawfully and feloniously did assault the said H. A. Reed,

with a deadly and dangerous weapon, to wit, a knife, and forcibly took hold of the said H. A. Reed, opened his coat and commenced to search the said H. A. Reed for money and valuable things with the intent then and there to rob the said H. A. Reed. But he, the said James Smith, did then and there fail in the perpetration of said robbery and felony aforesaid by one H. Otto Pickert, who then and there pointed a revolver at said James Smith and commanded him to let the said H. A. Reed alone, and which demand so made by said Pickert with pistol, had the effect, then and there, to prevent the said James Smith from completing and carrying out of said robbery and felony, or of so doing violence or injury to said H. A. Reed.

"And the grand jurors aforesaid do say that the said James Smith, then and there in the manner and form aforesaid unlawfully, willfully and feloniously did attempt to feloniously rob the money, property and valuable things of said H. A. Reed, against the peace and dignity of the state."

The defendant moved to quash the indictment, which motion was overruled, He was duly arraigned and pleaded not guilty, was tried, convicted and sentenced to the penitentiary.

I.   After he was convicted, the defendant renewed his objections to the indictment in his motion in arrest and the court having overruled that motion, it is assigned here as error.

The crime of robbery in this state is statutory and is divided into three degrees.   The line of demarcation between these degrees was settled in *State v. Jenkins*, 36 Mo. 372, and has been consistently maintained since that time.   It was then said, "It is of the very essence of robbery in the first degree, that the violence or fear of injury shall be present and immediate to the person, and that the property shall be actually taken from his

person, or in his presence and against his will; but in the second degree, the property is supposed to be delivered, or suffered to be taken, through fear that a threatened injury may be inflicted *at some different time,* either to his own person or property, or to the person of any relative or member of his family." See also sections 3530, 3531, Revised Statutes, 1889.

So distinct are the two grades, that it was held that upon an indictment for robbery in the first degree, a conviction could not be had for the second or third degree. *State v. Davidson,* 38 Mo. 374; *State v. Farrar,* 38 Mo. 457; *State v. Brannon,* 53 Mo. 244.

It is evident that the indictment in this case is an attempt, at least, to charge the defendant under section 3940, Revised Statutes, 1889, which provides for the punishment of *an attempt* to commit an offense. The language of the statute is: "Every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act toward the commission of such offense, but shall fail in the perpetration thereof, or shall be prevented or intercepted in executing the same, upon conviction therof, shall, in cases where no provision is made by law for the punishment of such attempt, be punished as follows,"etc. The punishment affixed is referable entirely to the punishment prescribed for the particular offense attempted.

It is, we think, apparent that in order to proceed intelligently under this section, the court and jury must be informed in the indictment what particular offense the defendant is charged with having attempted to commit, in order to grade his punishment, and to do this the particular acts constituting the attempt to commit that offense must be set forth.

Mr. Bishop thus defines an attempt under this and similar statutes: "An attempt is an intent to do a

particular thing which the law, either common or statutory, has declared to be a crime, coupled with an act toward the doing, sufficient both in magnitude and in proximity to the fact intended, to be taken cognizance of by the law that does not concern itself with things trivial and small.   Or, more briefly, an attempt is an intent to do a particular criminal thing, with an act toward it falling short of the thing intended."   1 Bishop's New Crim. Law, sec. 728.

Although this section, 3940, became a part of our law in 1835, no case requiring its construction reached this court until 1880, when *State v. Craft*, 72 Mo. 456, was decided, in which it was held that a conviction upon an indictment for an attempt to commit larceny, could not be sustained by evidence showing an attempt to commit robbery.   In *State v. Mills*, 88 Mo. 417, the indictment charged an attempt to commit a burglary, averring an attempt to do all the acts necessary to constitute burglary had the attempt succeeded.   In *State v. Frank*, 103 Mo. 120, it was held that an attempt to commit a crime was included in the allegation of the indictment charging the offense itself under the provision of section 1655, Revised Statutes, 1879; section 3950, Revised Statutes, 1889.   In *State v. Montgomery*, 109 Mo. 645, the correctness of defendant's position that an indictment for an attempt to commit a crime must allege the offense as specifically as though it was for the completed offense, was conceded.   The point discussed and ruled in that case was the construction of the section 3530, Revised Statutes, 1889.   Judge KELLEY, in the last edition of his "Criminal Law and Practice," section 1092, p. 763, says:   "The indictment must set out the offense according to the requirements of the statute, by stating the offense attempted, the act done, and that it failed or was prevented or intercepted."

The pleader was not content to charge the defendant with an assault with intent to commit a robbery, in which the same particularity is not required as in charging the offense itself (*State v. Smith*, 80 Mo. 516; *State v. Chumley*, 67 Mo. 41) but assumed the burden of convicting the defendant of an attempt to commit a robbery under section 3940. It is obvious that no conviction could be had of robbery in the first degree under an indictment for the second, nor of the second or third under an indictment charging the first, hence, to convict of an attempt, it must appear it was an attempt to commit a particular degree of robbery and this can only appear by averment of acts that would constitute that offense if they had not failed. *U. S. v. Hess*, 124 U. S. 483; 2 Bishop on Criminal Proc., sec. 1002.

The essentials of an indictment for robbery in the first degree are well defined. It was always deemed essential at common law to charge that the property was taken with violence from the person and *against the will of the party robbed.* 1 Hale's P. C. 534; *State v. Davidson*, 38 Mo. 374; *State v. Wilcoxen*, 38 Mo. 370.

This averment is not made in either count of this indictment. In lieu of the averment "take with violence from the person," a taking in the presence of the person robbed may be alleged, and it is sufficient to make out robbery in the first degree, to allege instead of a taking by force, that it was taken from the person robbed "by putting him in fear of *some immediate injury to his person.*"

The pleader attempts this averment by charging violence to his person, and "by putting Reed in fear of immediate injury" but does not allege the fear was immediate injury *"to his person."* For aught that appears the fear might have been of immediate injury to some relative or property. In charging a felony nothing is to be taken by intendment. In these respects

both counts are fatally defective.   Wharton on Crim. Law [2 Ed.], p. 144; Kelley's Crim. Law and Prac. [2 Ed.], secs. 626, 634; *State v. Brown*, 104 Mo. 365; *State v. O'Connor*, 105 Mo. 121.

II. The instruction of the court supplied the ele-ments that were wanting in the indictment and required the jury to find that the attempt was to take the property *against the will* by violence to the person or by putting him in fear of some immediate injury *"to his person."*   The instruction was correct, but was broader than the indictment.   The indictment could not be cured in this manner.

III. Inasmuch as we hold this indictment insuffi-cient, it becomes unnecessary to decide the other points raised in the admirable brief of the counsel who has defended the prisoner without fee or reward.   He evi-dently has a high conception of the duty imposed by accepting an appointment to defend a prisoner, who has no counsel.   The judgment is reversed and the defendant discharged from further custody under this indictment.   All concur.