STATE of Missouri, Respondent,

v.

Michael THOMAS, Appellant.

No. 53899.

Supreme Court of Missouri,
Division No. 1.

March 10, 1969.

Norman H. Anderson, Atty. Gen., Jefferson City, Sorkis J. Webbe, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Murray Stone, St. Louis, for appellant.

HOUSER, Commissioner.

Michael Thomas, charged with attempting to obtain money by means of a bogus check, § 561.450, RSMo 1959, V.A.M.S., waived a jury, was found guilty and senenced to four years' imprisonment, and has appealed.

His first point is that the circuit court erred in not sustaining his motion to dismiss the "amended" information for the reason that it charged a different offense from that charged in the original information. This prosecution was commenced by the filing of an "information" in the St. Louis Court of Criminal Correction, which in the terminology applicable exclusively to that court is the equivalent of what is ordinarily called the complaint (the accusation or statement of the offense upon the basis of which a warrant issues). The original information filed on August 18, 1967 charged appellant with Uttering a Forged Instrument (forgery in the second degree), which was made an offense by § 561.090, RSMo 1949. At the time of the filing of the original information, however, § 561.-090 was no longer on the statute books. It had been repealed some twelve years previously. Laws 1955, p. 505, § A. During the preliminary examination of appellant, and on August 29, 1967, the prosecuting attorney filed what he designated as an "amended" information, in which appellant was charged with attempting to obtain money by means of a bogus check, under § 561.-450. The preliminary examination was continued to and concluded on August 31, 1967, at which time appellant was bound over to the circuit court to answer the charge of attempting to obtain money by means of a bogus check.

■ Citing Criminal Rule 24.02, V.A.M.R., § 545.300, RSMo 1959, State v. Col-bart, Mo.Sup., 411 S.W.2d 92, and City of St. Louis v. Vetter, Mo.App., 293 S.W.2d 140, appellant contends that a distinctly different offense may not be charged by an amended information. The issue appellant seeks to raise, however, is not presented under the facts of this case. The original information did not state an offense because the supporting statute had been repealed. Filing the original information under a repealed statute was the same as if nothing in the nature of a complaint had been filed. That is to say, there was nothing before the court until the so-called amended information was filed; the first and only valid information sufficient to charge the commission of an offense was that filed August 29, 1967. Strictly speaking, no question of the propriety of an amendment to a defective or insufficient information is involved. State v. Harrington, Mo.Sup. (1968), 435 S.W.2d 318, 319 [1]. The act of the assistant circuit attorney in labeling it "amended" did not effect an amendment. There was nothing to amend. " * * * [W]here an affidavit or complaint ["information" in Court of Criminal Correction terminology] is so defective that it is not an affidavit or complaint at all, an amendment cannot ordinarily breathe life into it." 22 C.J.S. Criminal Law § 314, p. 812. The first information recognizable at law as such—that filed August 29—charged the commission of the offense of attempting to obtain money by means of a bogus check and appellant had a preliminary examination on that charge, according to the record. The court below did not err in overruling the motion to dismiss the "amended" information.

Appellant attacks the sufficiency of the amended information upon which he was tried. He claims that it does not properly charge the crime of attempting to obtain money by means of a bogus check because it fails to allege an overt act; fails to allege that the commission of the crime was not completed, and fails to allege that there was a possibility of completion of the crime. It is urged that the information charges

only an intent and preparation to commit a crime but no act towards the consummation of the crime; specifically that it fails to allege that appellant endorsed the check, properly filled out the check cashing card, and that the store representatives relied upon and accepted the check and were willing to turn money over to appellant.

The pertinent portions of § 561.450, under which this conviction was obtained, are as follows: "Every person who, with the intent to cheat and defraud, shall * * * attempt to obtain, from any other person, or persons, any money, * * * by means * * * of any false or bogus check * * shall be deemed guilty of a felony * * *."

■ The amended information, in one count, after alleging prior convictions, charged in substance that defendant feloniously, designedly, wilfully and with intent to cheat and defraud the named corporate merchant falsely pretended and represented to its named employee that defendant was one Claude Haynes and was payee of a certain false and bogus check (set forth in words and figures); that defendant further falsely pretended and represented to the employee that said false and bogus check was a genuine check of Crown Rambler Company and that he was an employee of Crown; that defendant attempted to obtain from said employee the sum of $102.23 of lawful money of the corporation by means of said false representations and pretenses so made to the employee, whereas in truth and fact the check was not a genuine check of Crown Rambler Company and defendant was not Claude Haynes, nor was he an employee of Crown, but that defendant failed in the perpetration of said crime, contrary to the form of the statute and against the peace and dignity of the state. The amended information charges the substantive elements of the crime: the intent to cheat and defraud; the attempt to obtain money from another by means of a false or bogus check and false representations and pretenses; overt acts looking to the consummation of the offense, and failure to perpetrate the crime. State v. Dunlap, Mo.Sup., 408 S.W.2d 76 [2]. It was not necessary to allege the possibility of the completion of the crime, the endorsement of the check, or the other matters of an evidential nature suggested by appellant. Appellant was sufficiently informed by the amended information.

Appellant's next point is that the state failed to show an attempt. Citing State v. Block, 333 Mo. 127, 62 S.W.2d 428, for the proposition that the three constituent elements of an attempt are the intention to commit the crime; performance of some act toward the commission of the crime, and failure to consummate its commission, appellant contends that there must be at least an apparent ability to commit the crime; that if the means employed are so clearly unsuitable that it is obvious that the crime cannot be committed the attempt is not indictable, and that under the evidence it is obvious that the crime *could not be committed.* Appellant's position is that the evidence showed no more than a mere preparation to commit a crime but that no overt act toward the consummation of the crime was shown; that the crime could not have been committed without endorsement of the check, the proper filling out and acceptance of the check card, reliance upon and acceptance of the check by the store's representatives and willingness on their part to turn money over to appellant; that none of these things was shown and therefore there was no apparent possibility of completion of the crime; that neither Etim nor Weese intended to give appellant any money and only listened to his mere solicitations.

The state's evidence: Appellant entered a merchandising establishment and asked an employee named Etim to cash this check:

"    CROWN RAMBLER            No. 4795              4-21
      3637 So. Kingshighway

To Mercantile Trust Company, St. Louis, Mo.
                                St. Louis, Mo.  August 11, 1967
      PAY THE SUM OF   THE SUM 102 Dols 23 CTS   DOLLARS $102.23

                              CROWN RAMBLER

      /⎺ CLAUDE W. HAYNES ⎤/
          463
                        s/s    H. C. SCHAIFF

       ':0810'''0021':    1 2'''08535                        "

———◆———

Etim asked appellant if he had previously cashed a check at this store. He answered "Yes." Etim checked the records but the name Claude W. Haynes did not appear in the record cards kept by the store. Etim so informed appellant, adding that under store procedure a person asking for a check to be cashed must produce his driver's license or draft card or present someone known to the company to identify him. Appellant then produced a driver's license bearing the name Claude Wynn Haynes and claimed that the check and the license were his and that he was working for Crown Rambler. Some doubt was aroused in Etim's mind because only one signature appeared on a check on which there were two lines for signatures. Etim took the check and license and presented them to the store manager, Mr. Weese, for examination and instruction. Mr. Weese looked at them. He was suspicious of the check because one item on the driver's license was altered and the spacing of the typewriting of the name and date on the check looked improper. Mr. Weese instructed Etim to go ahead and open a check card for appellant (a record to facilitate subsequent check cashing). It was a store policy that a check card be filled out before a check would be cashed. Mr. Weese kept the check and made several telephone calls, in the course of which he ascertained that Crown Rambler had gone out of business. In the meantime Etim asked appellant several questions about his age, height, etc. in order to fill out the check card. Etim compared the date of birth given by appellant with the date on the license. They agreed. Etim asked appellant to sign his name on the card exactly as it appeared on the driver's license. Appellant signed "Charles W. Haynes." Etim compared the two, said "Okay," and then asked appellant to "hold on" while he went to the manager for further instructions. The manager told Etim that the check was no good and not to cash it; that he had been in touch with the police, who would soon arrive to arrest appellant. Etim went back to the cashier's cage where he worked. By that time appellant had moved away from the counter and was walking away, "trying to escape." The manager locked the front door and "put the gun on" appellant while awaiting the arrival of the police. Appellant objected to detention, mentioning that he had not actually cashed the check; that he was merely attempting to cash it and reasoned that since he had received no money he should not be held. At no time did appellant actually endorse the

check. Endorsement is required for cashing a check at that store.

An "attempt" is an intent to do a particular thing which the law has declared to be a crime, "coupled with an act towards the doing, sufficient, both in magnitude and in proximity to the fact intended, to be taken cognizance of by the law, that does not concern itself with things trivial and small. Or, more briefly, an attempt is an intent to do a particular criminal thing, with an act towards it falling short of the thing intended." State v. Smith, 119 Mo. 439, 444, 24 S.W. 1000, 1001, quoted with approval in State v. Scarlett, Mo.Sup., 291 S.W.2d 138, 140, 141. An attempt is separate and distinct from the crime itself. It was not necessary for the appellant to have received money from the cashing of the bogus check to be guilty of a criminal attempt. To be found guilty of an attempt to commit a crime there must be some overt act in part execution of the intent to commit the crime,[1] which falls short of the completion of the crime,[2] which overt act must move directly toward the consummation of the crime. Authorities, supra. There must be at least an apparent ability to commit the crime, State v. Block, supra; it must be apparently possible. Mere preparation is not sufficient to constitute an attempt to commit a crime. The defendant must have taken steps going beyond mere preparation, by doing something bringing him nearer the crime he intends to commit. 22 C.J.S. Criminal Law § 75 (2), p. 231. The act need not, however, be the ultimate step toward, or the last proximate, or the last possible, act to the consummation of the crime attempted to be perpetrated. Idem, p. 233.

The existence of criminal intent is evident from the testimony and appellant's admission that he presented for cashing a check which must be conceded was bogus. Overt acts moving directly toward the consummation of the crime are to be found in appellant's presentation of a bogus check for cashing; pretending that he was the named payee in the check; giving personal information required to obtain a check card, which was a preliminary requirement of the store before checks would be cashed; *signature of that card;* offering a driver's license in support of his request; claiming that the check and license were his and that he was employed by the pretended maker of the check and his act of waiting for the manager's approval. It is reasonable to conclude that but for the alertness of the store's representatives the crime would have been consummated; that there was no inherent impossibility but rather an apparent possibility of committing the crime;· that the intervening circumstances which thwarted the consummation of the crime occurred as a result of the actions of third parties, acting apart from and independent of appellant's will and control. Appellant's acts went beyond mere preparation; they went far enough toward the eventuality of obtaining the cash so as to cross the line which divides criminal intention from criminal attempt. Not only one but several of the series of acts necessary for the full execution of his criminal intent were done and accomplished. That appellant had not yet endorsed the check, and that his efforts to deceive and impose upon the representatives of the store were not successful, are not sufficient to save him from conviction of an attempt. The court did not err in finding appellant guilty of an attempt, as charged, under this evidence.

Appellant seeks to make the further point that if there was an attempt it was voluntarily abandoned by appellant before it was finally consummated and

1. State v. Wright, 342 Mo. 58, 112 S.W.2d 571; State v. Bliss, Mo.Sup., 80 S.W.2d 162; State v. Block, supra; State v. Lourie, Mo.Sup., 12 S.W.2d 43; State v. Davis, 319 Mo. 1222, 6 S.W.2d 609.

2. State v. Wright, supra; State v. Bliss, supra; State v. Davis, supra.

therefore he should be acquitted. This defense is unavailable under evidence demonstrating the doing of a number of acts in a series of acts which if consummated constitute the crime, acts going beyond mere preparation and looking to final consummation. 22 C.J.S. Criminal Law § 76. Once the elements of a criminal attempt are complete, abandonment of the criminal purpose is no defense to a charge of attempt. 21 Am.Jur.2d Criminal Law § 110.

Finally, appellant urges that the court erred in sentencing him to four years' imprisonment. When asked for a recommendation with respect to punishment the circuit attorney indicated that he would have recommended four years on a plea of guilty but that since the state had to try the case he was recommending five years. The court assessed a five-year penalty, but after the point was raised in appellant's motion for new trial the court reduced it to four years. Appellant pleads the difference between a completed offense and an attempt merely and claims that four years was unfair, unreasonable and excessive. He further contends that the court "imposed an additional burden upon the Defendant's right to assert his constitutional right of trial." Apparently appellant is claiming some chilling of his right not to plead guilty and his right to demand a jury trial, based on the reason given by the circuit attorney for his recommendation and the court's action in initially following the recommendation. The basis of his claim is not made clear. A recommendation is only a recommendation. The court is the final arbiter. The motives of the circuit attorney may not be imputed to the court. That the court was moved by the suggestions of appellant in his motion for new trial is evident from the fact that the sentence was reduced one year after the suggestions were made. Section 561.450, RSMo 1959, authorizes a maximum punishment of seven years' imprisonment for this offense. The sentence of four years is within the statutory limits. Appellant had been convicted of four prior felonies.

There is no basis for the claim that the penalty is unfair, unreasonable or excessive.

Judgment affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.